FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JAN 15 2019
JAMES W. McCORMACK, CLERK
By: DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DR. HADRIAN NICHOLAS ARTHUR FRAVAL
and SIL GLOBAL LIMITED — PLAINTIFFS

V. NO. 4:18CV-844-KGB

RICHARD MAYS, JR.; MAYS, BYRD and
ASSOCIATES, P.A.; JOHN DOE 1; and
JOHN DOES 2 THROUGH 6 — DEFENDANTS

RICHARD MAYS, JR. — DEFENDANT/
THIRD PARTY PLAINTIFF

V.

DWIGHT DUBOSE, a/k/a DWIGHT JENKINS;
BURNETTE DUBOSE; THE ROYAL SWISS
CREDIT UNION AND CAPITAL TRUST;
VAUGHN BUREN, INC.;
THE ADVISORY LIMITED; and
SUSAN DRAGONEAS — THIRD-PARTY DEFENDANTS

## SEPARATE DEFENDANT RICHARD MAYS, JR.'S THIRD-PARTY COMPLAINT

Richard Mays, Jr., by and through his attorneys, Barber Law Firm PLLC, for his Third-Party Complaint against Dwight Dubose a/k/a Dwight Jenkins, Burnette Dubose, the Royal Swiss Credit Union and Capital Trust, Vaughn Buren, Inc., The Advisory Limited, and Susan Dragoneas, states:

1. Dwight Dubose is an individual who, upon information and belief, resides in the State of Massachusetts. He also calls himself Dwight Jenkins.

2. Burnette Dubose is an individual and the wife of Dwight Dubose, who resides, upon information and belief, in the State of Massachusetts.

3. The Royal Swiss Credit Union and Capital Trust ("Royal Swiss Trust") is a Delaware Statutory Trust that is located at 1150 1st Avenue, Suite 501, King or Prussia, Pennsylvania 19406. Its registered agent is Registered Agents Legal Services, LLC, located at 1013 Centre Rd. Suite 403s, Wilmington, Delaware, 19805.

4. Vaughn Buren, Inc. ("VBI") is a foreign corporation doing business in Arkansas. It is located at 400 Trade Center, Suite 5900, Woburn, Massachusetts, 01801. According to the Massachusetts Secretary of State website, its registered agent, president, treasurer, secretary, and director is Burnette S. Dubose, located at 16 Seaver Street, Brockton, Massachusetts, 02301.

5. The Advisory Limited ("TAL") is an investment business located at 226, Eden Plaza, Eden Island, Republic of Seychelles.

6. Susan Dragoneas is an individual who, upon information and belief, resides in South Africa. She is the Director of TAL and operated as its agent in all relevant transactions.

7. At all relevant times, the Third-Party Defendants communicated and transacted business with Mr. Mays via electronic mail, first-class mail, wire, and telephone. Mr. Mays was at all times located in Arkansas.

8. This Court has subject matter and personal jurisdiction. Venue is proper in this Court.

9. On or about November 13, 2018, Plaintiffs filed a complaint against the Defendants in the above-styled matter. A copy is attached as **Exhibit A.**

10. On or about January 2, 2019, Mr. Mays filed his Answer to Plaintiffs' Complaint. On or about January 8, 2019, Mr. Mays filed his Amended Answer to Plaintiffs' Complaint.

11. While Mr. Mays denies any liability for the acts alleged in Plaintiffs' Complaint, he alleges that in the event he is found liable for any damages resulting from Plaintiffs' Complaint, he is entitled to recover from and be indemnified by the Third-Party Defendants for any and all losses incurred by Plaintiffs.

12. Prior to the transactions with Plaintiffs, Mr. Mays had previously worked with the Third-Party Defendants on a separate transaction. At all relevant times, Third-Party Defendants contacted and communicated with Mr. Mays in Arkansas.

13. Mr. Mays served as escrow agent for Plaintiffs.

14. G5 Global Vision Foundation ("G5") acted as agent for Plaintiffs.

15. G5 coordinated with Susan Dragoneas to provide investment opportunities for Plaintiffs.

16. Plaintiffs informed G5 that they were ready to fund the escrow account and begin trading. At all times, G5 had authority to conduct business on Plaintiffs' behalf.

17. After being enlisted as escrow agent, Mr. Mays received instructions from Susan, which she received from G5, to move Plaintiffs' assets to an account owned by Dwight Dubose.

18. Dwight Dubose was presented to Mr. Mays as a broker who could provide the investments that Plaintiffs desired.

19. Dwight Dubose was introduced to Mr. Mays by Susan Dragoneas.

20. He presented himself as Dwight Jenkins. Mr. Mays later learned that Dwight's true last name was Dubose.

21. Dwight Dubose held himself out as an investing professional with exceptional skill at investing for large short-term gains.

22. At Susan Dragoneas direction, Mr. Mays transferred Plaintiffs' money to an account managed by Dwight Dubose. This money was intended to liquidate a trading position for a different G5 client. G5 specifically approved and requested this transaction on February 24, 2017.

23. On June 7, 2017, Mr. Mays received a request to return Plaintiffs' money from escrow. Mr. Mays then contacted Dwight Dubose to have the funds returned.

24. Mr. Mays experienced great difficulty in learning the status of the account. Mr. Mays only knows that Dwight Dubose never returned the funds. Mr. Mays is unaware if Dwight Dubose removed the money from the account or if Dwight Dubose depleted the account. To the date of this filing, Mr. Mays has been unable to secure a return of the funds from Dwight Dubose. Dwight Dubose assured Mr. Mays that the funds would be returned, but it appears the money is gone.

25. Any action that Mr. Mays took regarding the escrow money was at the direction of Susan Dragoneas, who acted on behalf of G5—agent for Plaintiffs.

26. Susan Dragoneas acted on behalf of TAL at all relevant times as its agent.

27. Any misappropriation of funds occurred in the sole control and possession of Dwight Dubose, his company, VBI, his wife, Burnette Dubose, or the Royal Swiss Trust that Dwight and Burnette Dubose manage.

28. During the transfers from escrow and at all times that transactions occurred, Mr. Mays only had contact with Plaintiffs through Susan Dragoneas, and Susan Dragoneas only had

contact with Plaintiffs through G5. All actions Mr. Mays took were at the direction of Susan Dragoneas and TAL. Therefore, Susan Dragoneas and TAL are responsible for any breach of agreements and for any misappropriation of funds that occurred after being transferred at Susan Dragoneas's and TAL's instructions.

29. At her direction through G5, Mr. Mays moved the money to Dwight Dubose, who managed the account through his wife Burnette Dubose and his business entities, the Royal Swiss Trust and VBI. Having sole control over the funds, the parties mentioned in this paragraph are responsible for any misappropriation of Plaintiffs' funds.

30. Pursuant to the Arkansas Declaratory Judgment Act, Richard Mays, Jr. is entitled to a declaration that Dwight Dubose, Burnette Dubose, the Royal Swiss Credit Union and Capital Trust, Vaughn Buren, Inc., The Advisory Limited, and Susan Dragoneas are obligated to defend and indemnify Richard Mays, Jr. for any judgment, attorney's fees, or costs arising from the incident giving rise to the Complaint.

31. While continuing to deny liability to the Plaintiffs, Richard Mays, Jr. adopts and incorporates the allegations of the Complaint, which allegations are reasserted in their entirety against the Third-Party Defendants. Specifically, Ricky Mays, Jr. asserts that, if he is liable to the Plaintiffs for the reasons stated by the Complaint, then the Third-Party Defendants are liable to Richard Mays, Jr. for the same reasons and on the same grounds.

32. In the alternative, Richard Mays, Jr. alleges he is entitled to contribution, indemnity and/or an apportionment of fault concerning any fault by the Third-Party Defendants.

33. Richard Mays, Jr. requests a trial by jury on all issues triable to a jury concerning this matter.

WHEREFORE, Richard Mays, Jr. prays that, in the event of an adverse judgment by the Plaintiffs against him, that he have judgment over and against the Third-Party Defendants, Dwight Dubose, a/k/a Dwight Jenkins, Burnette Dubose, the Royal Swiss Credit Union and Capital Trust, Vaughn Buren, Inc., The Advisory Limited, and Susan Dragoneas, for any and all amounts which may be adjudicated against them, together with costs, attorneys' fees, for contribution and/or an apportionment of fault concerning any fault by Richard Mays, Jr. and to the Third-Party Defendants, and all other appropriate relief to which he may be entitled.

Respectfully submitted,

Barber Law Firm PLLC
Attorneys for Defendant Richard Mays, Jr.
425 West Capitol Avenue, Suite 3400
Little Rock, AR 72201-3483
Telephone: (501) 372-6175 / Fax: (501) 375-2802
E-mail: rkmcculloch@barberlawfirm.com

BY ______________________
R. Kenny McCulloch AR Bar Number 88044

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 13 2018

JAMES W. McCORMACK, CLERK
By: [signature] DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DR. HADRIAN NICHOLAS ARTHUR FRAVAL AND SIL GLOBAL LIMITED** — **PLAINTIFFS**

**V.** — **CASE NO.** 4:18-cv-844 - KGB

**RICHARD MAYS, JR.; MAYS, BYRD AND ASSOCIATES, P.A.; JOHN DOE 1; AND JOHN DOES 2 THROUGH 6** — **DEFENDANTS**

**COMPLAINT**

This case assigned to District Judge Baker
and to Magistrate Judge Ray

Come the Plaintiffs, Dr. Hadrian Nicholas Arthur Fraval and SIL Global Limited (collectively "Plaintiffs"), by and through their undersigned counsel, and file this lawsuit against the Defendants, Richard L. Mays, Jr.; Mays, Byrd and Associates, P.A.; John Doe 1; and John Does 2 - 6, and for their Complaint state:

**PARTIES**

1. Plaintiff Dr. Hadrian Nicholas Arthur Fraval ("Fraval") is an adult resident of Melbourne, Victoria Australia, Passport No. E7595551.

2. Plaintiff SIL Global Limited ("SIL") is a Hong Kong corporation with offices located at 1504, Bonham Trade Center, 50 Bonham Strand, Sheung Wan, Hong Kong.

3. Defendant Richard Mays, Jr. ("Mays, Jr."), Arkansas Bar No. 2010150, is an adult resident of the Eastern District of Arkansas, believed to reside in or around Little Rock, Arkansas, with his business office located at Mays, Byrd & Associates, P.A., 212 Center Street, Suite 700, Little Rock, Arkansas 72201.

4. Defendant John Doe 1 is an adult resident of the Eastern District of Arkansas, believed to reside in or about Little Rock, or adjacent areas.



EXHIBIT
"A"

5. Defendant Mays, Byrd and Associates, P.A. ("MBA") is a for-profit corporation with its principal place of business at 212 Center Street, Suite 700, Little Rock, Arkansas 72201.

6. Defendants John Does 2 through 6 are currently-unknown individual and business entities believed to reside outside of the State of Arkansas and in some instances outside of the United States.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C § 1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8. Additionally, this Court has federal question jurisdiction under 28 U.S.C. § 1331 since this matter includes allegations raising questions related to federal statutes. This Court also has jurisdiction pursuant to 18 U.S.C. § 1964.

9. Venue is proper in the Eastern District of Arkansas based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this case occurred in this judicial district.

## FACTUAL ALLEGATIONS

10. Defendants have been engaged in a series of unlawful acts and omissions in the factual manner set forth in the following Paragraphs.

11. In or about December of 2016, certain John Doe Defendants referred and recommended Mays, Jr. and MBA to serve as the escrow agent ("the Escrow Agent") for Plaintiffs in connection with the institutional funding being arranged for Plaintiffs' large Gosford and solar infrastructure project in Australia and California, USA ("the Project").

12. The sum of five hundred thousand United States dollars ($500,000) ("the Funds") was placed into an escrow account established with MBA and Mays, Jr. pursuant to a duly-signed escrow agreement dated December 14, 2016 (the "Escrow Agreement"). A true and correct copy of the Escrow Agreement is attached as Exhibit 1 and incorporated herein by reference.

13. The Funds were understood and intended to serve as the initial security required to obtain much larger institutional financing being arranged by certain John Doe Defendants (namely John Does 2 through 6).

14. By mutual agreement the Funds were to be held in a "dedicated special purpose client account in order that the funds may be held and confirmed for the benefit of a Third Party."

15. The "third party" contemplated here was to be a major global financing institution such as Merrill Lynch, which would serve as a financing partner for the infrastructure project with Plaintiffs and their designated representatives.

16. The Escrow Agreement provided an initial term of 92 days for said special purpose client account ("the Initial Term"), during which time the Funds were to be held in MBA's general trust account. Id.

17. On or about December 16, 2016, Plaintiffs wired the Funds to Mays, Jr and MBA at the agreed-upon MBA Bank of America account, numbered xxxxxx-1860 (a true and correct copy of which is attached as Exhibit 2 and incorporated by reference), receipt of which was acknowledged by Mays, Jr. by letter dated December 20, 2016 which incorrectly read "2017" (a true and correct copy of which is attached as Exhibit 3 and incorporated by reference).

18. Pursuant to the Escrow Agreement, Mays, Jr. and MBA provided Plaintiffs with a monthly Bank of America statement dated February 6, 2017 for the account of RLM JR TRUST IV. Said statement purported to show an available balance of $555,247.70, and a true and correct copy of the document is attached hereto as Exhibit 4 and incorporated by reference.

19. The Initial Term ended in March of 2017, despite the assurances of certain John Doe Defendants that third party funding for the Project was imminent.

20. Based upon assurances by Defendants that third party funding remained imminent, and would close within weeks with Merrill Lynch or a similarly-situated major institutional lender, Plaintiffs agreed that MBA and Mays, Jr. could continue to hold the Funds in escrow under the terms of the Escrow Agreement.

21. In or about June or July 2017, the promised third party financing had still not materialized, causing Plaintiffs to demand the return of the Funds pursuant to the terms of the Escrow Agreement. Mays, Jr. acknowledged said request and said he would comply via an email dated July 13, 2017, a true and correct copy of which is attached hereto as Exhibit 5 and incorporated by reference.

22. In July of 2017, Plaintiffs withdrew this demand when presented by Mays, Jr. and other Defendants with a Structured Product Term Sheet for purportedly providing Project financing from Meryl Lynch (sic) to be arranged by certain John Doe Defendants. A true and correct copy of the correspondence is attached hereto as Exhibit 6 and incorporated by reference.

23. By September of 2017 the major Project financing had still not closed, despite the exchange of various draft documents and repeated Defendants' assurances that closure was imminent.

24. On September 13, 2017, Fraval again demanded the return of the Funds, which demand was acknowledged by Mays, Jr. in his September 14, 2017 email, a true and correct copy of which is attached hereto as Exhibit 7.

25. Nevertheless, a day later Mays, Jr. informed Plaintiffs that the Funds were under "administrative hold" and could not be released at that time. Id.

26. Any such "administrative hold," if indeed one in fact ever existed, was done without Plaintiffs' knowledge or consent.

27. In October of 2017, Mays, Jr. assured Plaintiffs that the "administrative hold" was being released and that the Funds would be returned immediately.

28. However, the Funds were never returned and in November of 2017 Mays, Jr blamed the delay on unspecified "compliance" problems. A true and correct copy of the correspondence is attached as Exhibit 8 and incorporated by reference.

29. In December of 2017, Mays, Jr. and the other Defendants demanded a $5,000 payment for expenses before the Funds could be returned, which payment was made by Plaintiffs and their representatives.

30. For the ensuing four months, from January through April of 2018, Plaintiffs repeatedly demanded return of the Funds only to be met with a continuing barrage of false assurances and bogus explanations as to why the Funds were not returned.

31. In April of 2018, Plaintiffs retained U.S. counsel to secure the return of the Funds from Mays, Jr. and other Defendants both named and as yet unnamed and unknown. Demands were made upon Mays Jr., John Doe 1, and MBA for the return of the Funds, but with no success. A true and correct copy of this correspondence is attached as Exhibit 9 and Exhibit 10, and incorporated by reference.

32. In the course of discussions during the months that followed, Mays, Jr. provided various documents from various John Doe Defendants purporting to explain the delays in returning the Funds and/or assuring the return of the Funds. None of these explanations or assurances ever proved to be truthful or meritorious.

33. Finally, Mays, Jr. provided "proof" to Plaintiffs that the Funds were safe and still being held in escrow in the form of a bank statement from Toronto Dominion Bank in the sum of $500,000. A true and correct copy of the document is attached hereto as Exhibit 11 and incorporated herein by reference.

34. Upon investigation that bank statement proved to be fraudulent, as was subsequently admitted by Mays, Jr. to Plaintiffs' representative.

35. From the date of Plaintiffs' original transfer of the Funds to Mays, Jr. and MBA to the present date, various John Doe Defendants involved with Mays, Jr. have assured Plaintiffs that Mays, Jr. and MBA were honest and reliable escrow agents and attorneys and that the Funds would eventually be returned. As of the time of filing this lawsuit, those statements remain palpably false.

36. At no time have Plaintiffs modified or amended the terms of the Escrow Agreement to permit the Defendants, individually or collectively, to withdraw or transfer the Funds without the express written consent of the Plaintiffs, which consent was never requested at any time and has not been granted at any time.

## LEGAL AND REGULATORY FRAMEWORK

37. While Mays, Jr. may seemingly have been the primary perpetrator of the misappropriation of monies, absolutely none of it could have taken place without the improper acts or omissions of John Doe 1, MBA, and others.

38. Specifically, an escrow is essentially a three-party contract which is created when a grantor (i.e., Plaintiffs) delivers money to a third person (i.e., Mays, Jr. and MBA) with instructions to hold it safely to serve as security for a third party transaction upon the happening of certain conditions.

39. By definition escrow means neutral and independent from the parties to the transaction. In this case, for the reasons stated above Mays, Jr. and MBA were not neutral and, to the contrary, were closely intertwined with various other presently-unknown Defendants.

40. It is well-established that where a person accepts the function as escrow agent for certain parties, the agency creates a relationship of confidence which he could not violate or pervert to his own advantage or the detriment of either principal. Collins v. Heitman, 225 Ark. 666, 284 S.W.2d 628 (1956); Wochos v. Woolverton, 2010 Ark. App. 802, 378 S.W.3d 280 (2010) (an escrow agent is the agent of both the buyer and seller and is charged with the duty of carrying out the terms and conditions of the escrow agreement).

41. Moreover, an agent, regardless of how innocent his intentions may be, cannot place himself in a situation where personal interests conflict with the duties owed his principal. Collins, *supra*.

42. Everyone, whether designated as agent, trustee, servant, or otherwise, who is under a contract or other legal obligation to represent or act for another in any particular business or line of business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such interest or purpose. Id.

43. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty, as well as law. Id.

44. On this note, an escrow agent is in a confidential relationship with the other parties to an escrow agreement, which if such a relationship exists it imposes a duty of disclosure on the escrow agent. Badger Capital, LLC v. Chambers Bank of N. Ark., 650 F.3d 1125 (8th Cir. 2011).

45. This is because under Arkansas law, an escrow agent becomes agent of both parties and this agency create a fiduciary relationship. Patel v. Gannaway, 726 F.2d 382 (8th Cir. 1984).

46. Despite the existence of the Escrow Agreement, Mays, Jr. and MBA unilaterally and impermissibly altered the terms of this contract by distributing the monies at their unilateral direction.

47. However, once a valid deposit has been made in accordance with the contract of the parties, neither party can revoke the escrow during the escrow period without the consent of the other. However, that is precisely what the Defendants did when they unilaterally canceled and made a nullity of their obligations to Plaintiffs.

48. When money is delivered to an escrow, no legal title technically passes until the condition has been performed or the event has occurred upon which it is to be delivered to the grantee.

49. However, in this instance the condition was not performed and the event never occurred, such that at all times relevant the money in question was still Plaintiffs' money because no legal title had officially passed.

50. Put another way, title to the subject of the escrow does not pass title prior to the performance of the conditions. Von Mosch v. Waldrop, 177 Ark. 903, 8 S.W.2d (1928); Mansfield Lumber Co. v. Gravette, 177 Ark. 31, 5 S.W.2d 726 (1928).

51. A person standing in a fiduciary relationship may be held liable for any conduct that breaches a duty imposed by the fiduciary relationship. Id.

52. Moreover, regardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. Id.

53. When the condition upon which money deposited in escrow is to be delivered is not complied with, the depositary is obligated to redeliver the money to the depositor. In this instance Mays, Jr. and MBA failed to do so.

54. Since the depositary is bound by the terms of the deposit and charged with the duties voluntarily assumed by them, liability attaches to them for failing to follow their instructions, whether done deliberately or negligently.

55. Multiple long-standing Arkansas cases hold to this effect. See, *e.g.*, Bank of Rison v. Layne & Bowler Co., 173 Ark. 368, 292 S.W. 126 (1927) (where money on deposit in escrow was inappropriately paid out the bank was liable, with interest, to the plaintiff); Rosell v. Pulaski Bank & Trust Co., 265 Ark. 847, 582 S.W.2d 1 (1979) (escrow agent was liable for value of a CD which it improperly released to a party); Perkins v. Clinton State Bank, 593 F.2d 327 (8th Cir. 1979) (bank's breach of fiduciary duty as escrow agent in negligently releasing originally escrowed documents constituted proximate cause of vendors' loss).

56. Moreover, an escrow agent is personally liable for commingling escrow funds with other funds without authority.

57. Even if Mays, Jr. and MBA claim that they are supposedly innocent parties to the other unknown Defendants' actions, they are still nevertheless liable since they have suffered no loss and because of the principle that when one of two innocent persons must suffer from the

wrongful act of a third, the loss should be borne by the party who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.

58. Indeed, a depositary who breaches their duties to the parties to the escrow agreement may be held liable either in tort or for breach of contract, or for both simultaneously.

## CAUSES OF ACTION

### Breach Of Contract

59. As described above, the actions and inactions of Mays, Jr. and MBA constitute a breach of contract. Specifically, the Escrow Agreement was materially breached by these Defendants.

60. In addition to being responsible for the damages stemming from such breaches, Defendants are also responsible for paying Plaintiffs' attorney's fees and costs pursuant to Ark. Code Ann. § 16-22-308.

### Breach Of Fiduciary Duty

61. Mays, Jr. and MBA owed fiduciary duties to Plaintiffs, including but not limited to acting in and protecting their interests, safeguarding their money, and not allowing them to be harmed.

62. For the reasons stated previously, these Defendants breached their fiduciary duties and are liable to Plaintiffs in tort. They are responsible for the actual damages that they caused, as well as punitive damages for their intentional and knowing, malicious, and reckless conduct.

### Conversion

63. As described above, Mays, Jr. and MBA engaged in actions which effectively constituted conversion, which is the wrongful or unauthorized exercise of dominion or control over another person's property.

64. More specifically, they participated in wrongful conduct which operated as a distinct act of dominion and control over Plaintiffs' entrusted property that was inconsistent with their rights as the owner of the property.

65. Plaintiffs suffered injury as a result of these Defendants' actions and should be awarded compensatory damages as well as punitive damages in an amount to be determined at trial.

**Civil Conspiracy**

66. The foregoing actions and conduct by the Defendants, individually and collectively, constitutes a civil conspiracy, which (1) is an agreement to accomplish a purpose that is unlawful or oppressive, or alternatively (2) is an effort to accomplish, by unlawful or oppressive means, a purpose that is not in itself unlawful or oppressive.

67. Upon information and belief, the above-referenced Defendants knowingly entered into this conspiracy with other presently-unknown Defendants.

68. One or more of the above-referenced Defendants committed one or more overt acts in furtherance of the alleged conspiracy.

69. The above-referenced Defendants, in entering into the conspiracy, had the specific intent to harm Plaintiffs.

70. Plaintiffs suffered damages as a result, which should be paid by the Defendants.

**Fraud And Misrepresentation**

71. As described above, Defendants' actions and inactions constituted actionable fraud.

72. This included them knowingly making multiple false representations of past or present material fact. Even if some false representations were not intentionally or knowingly

made in every respect, they still had a fraudulent effect and therefore still constituted constructive fraud if not technically rising to the level of actual fraud.

73. These actions and representations were made with the intent to induce reliance by Plaintiffs, which caused them to act or not act depending upon the facts and circumstances.

74. Further, by staying silent, failing or refusing to take action, and effectively burying their heads in the sand, Defendants engaged in fraud and/or constructive fraud because they had an affirmative duty to speak and/or act.

75. Such facts and circumstances also constitute and include affirmative acts of fraudulent concealment which effectively tolled any applicable statute of limitations.

76. Indeed, when the very people who are supposed to be looking out for and protecting Plaintiffs' interests are the same people who are actively and passively taking advantage of them through wrongful actions or inactions, Plaintiffs were not in a position to timely take legal action.

77. Plaintiffs were injured as a result of the Defendants' actual and constructive fraud, and they should pay compensatory and punitive damages as a result.

**Violation Of The Arkansas Deceptive Trade Practices Act**

78. Ark. Code Ann. § 4-88-113(f) provides a private cause of action under the Arkansas Deceptive Trade Practices Act to those who have been harmed and suffered actual financial loss in connection with their reliance upon trade practices that are deceptive, unconscionable, or unlawful.

79. For the reasons stated above, all of the Defendants were engaged in such trade practices with regard to the transaction involving Plaintiffs, and engaged in untrue statements of material fact and other wrongful acts.

**Civil Action By Crime Victim**

80. Ark. Code Ann. § 16-118-107(a)(l) provides that "[a]ny person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct."

81. Under Ark. Code Ann. § 16-118-107(c) "[t]he remedy provided in this section shall be in addition to any other remedies in law or equity."

82. Plaintiffs are entitled to bring this action, because under Ark. Code Ann. § 16-118-107(b) "[t]he action may be maintained by the person who was injured or damaged or, after the person's death, the executor, administrator, or representative of his or her estate."

83. Per Ark. Code Ann. § 16-118-107(a)(2) "[t]he burden of proof for showing conduct that constituted a felony shall be a preponderance of the evidence[,]" and under Ark. Code Ann. § 16-118-107(a)(3) "[i]f the person who is injured or damaged prevails, he or she shall be entitled to recover costs and attorney's fees."

84. With this in mind, the preponderance of the evidence establishes that Defendants' conduct violated multiple Arkansas criminal laws, including but not limited to Ark. Code Ann. § 5-36-103(b) (providing that theft of property is a Class B felony if $25,000 or more was knowingly taken, transferred, etc. from another person with thepurpose of depriving them of it, or by use of deception or threat).

85. The preponderance of the evidence also establishes that Defendants' conduct was felonious and violated Arkansas criminal laws, including but not limited to Ark. Code Ann. § 5-36-106 (providing that theft by receiving is a Class B felony if $25,000 or more was received, retained or disposed of when the person knew that the property was stolen or had good reason to believe that the property was stolen; the unexplained possession or control by the person of

recently stolen property gives rise to a presumption that a person knows or believes that property was stolen).

**Constructive Trust And Equitable Lien (Unjust Enrichment)**

86. A constructive trust should be imposed upon and serve as an equitable lien against any property purchased with Plaintiffs' money, as well as against the transferees of their money whose names are unknown at this time.

87. Specifically, a constructive trust is based upon unjust enrichment and may be applied when one who holds title to property agreed to hold the property for the benefit of another.

**Civil RICO (Racketeer Influence And Corrupt Organization Act)**

88. Defendants have engaged in a pattern of racketeering activity connected to the acquisition, establishment, conduct or control of their respective enterprises. In furtherance of their pattern of racketeering activity, Defendants have taken multiple actions constituting wire fraud under 18 U.S.C. § 1343, which amounts to or poses a threat to continued criminal activity.

89. Defendants' wire fraud consists of their scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; their use of the interstate wires for the purpose of executing the scheme; and a specific intent to defraud either by devising, participating in or abetting the scheme.

90. The actions of Defendants constitute a conspiracy under RICO because Defendants conspired to commit these RICO offenses and acted in furtherance thereof.

91. Under 18 U.S.C. § 1964(c) Plaintiffs and all others similarly-situated are entitled to recover threefold their damages plus costs and attorney fees from Defendants.

**Negligence (Including Negligent Supervision)**

92. Defendants John Doe 1 and MBA engaged in negligence to the extent that they did not engage in intentional, tortious, fraudulent or criminal conduct.

93. Specifically, John Doe 1 is believed to be a senior lawyer of long experience who holds, or at relevant times held, a senior management position in MBA, vested with the experience, responsibility and abilities needed to adequately supervise its younger, less-experienced attorneys, including Mays, Jr.

94. In this capacity, John Doe 1 and MBA knew, or should have known, about Mays, Jr.'s history of, and propensity for, misconduct, including by way of example and not limitation, (i) Mays, Jr.'s serious ethics violations as a member of the Arkansas Parole Board that led to his removal from the Parole Board and being severely disciplined by the Arkansas Supreme Court Committee on Professional Conduct, (ii) Mays, Jr.'s conduct giving rise to at least two other civil lawsuits alleging serious financial improprieties stemming from escrow agreements similar to the one at issue in this case, and captioned as (a) Viva La Vegan Grocery, Inc. and Isaak Iftikhar v. Richard Mays, Jr.; Mays, Byrd & Associates, P.A.; et al., Case No. 60CV-17-7189 (Pulaski County, Arkansas Circuit Court) and (b) Terence Branch and Strategic Vision Corporation v. Richard Mays, Jr. and Mays, Byrd & Associates, P.A., Case No. 60CV-18-3655 (Pulaski County, Arkansas Circuit Court).

95. As a result of these Defendants' failing to supervise Mays, Jr. in a professional and responsible manner, including their failure to so much as acknowledge, must less act upon, Plaintiff Fraval's repeated entreaties for their assistance, these Defendants' conduct individually and collectively fell below the standard of care owed and constituted a breach of their duty to Plaintiffs, including the duty of care that arises between an attorney and fiduciary and their

client. These Defendants knew or should have known that their conduct would result in injury to the Plaintiffs.

96. Plaintiffs were injured by Defendants' negligence and such conduct proximately caused damages for which they owe appropriate compensation.

**Legal Malpractice**

97. The allegations of the foregoing paragraphs are realleged and incorporated herein as if fully set forth word for word.

98. By negligence and failing to perform their duties as the escrow agent, John Doe 1 and MBA also breached the fiduciary duties that were owed to Plaintiffs.

99. Because of this breach, Plaintiffs have lost the use of $500,000.00 (five hundred thousand dollars) which they deposited into MBA's trust account, plus interest thereon, and the payment of $5,000 for expenses.

100. Plaintiffs have suffered damges due to Defendants' actions and inactions.

101. Further, Plaintiffs lost the opportunity for project funding which would have funded Plaintiff's Gosford - Solar development project.

102. Plaintiffs suffered damages attributable to a loss of business which has not yet been determined but which will be determined by the jury at trial.

**Request For Monetary Damages**

103. By reason of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer damages to their business, reputation, and goodwill and have profits that Plaintiffs would have made but for Defendants' actions.

104. Plaintiffs request that this Court award damages to Plaintiffs in an amount equal to or greater than the amount of actual damages suffered by Plaintiffs and any higher amount as the Court may award in its discretion.

105. Plaintiffs seek any and all damages due as a result of Defendants' violation of the Racketeer Influenced and Corrupt Organizations Act, specifically treble the amount of actual damages suffered by Plaintiffs pursuant to 18 U.S.C. § 1964(c).

106. Defendants' actions and inactions were intentional, knowing, voluntary, malicious and reckless, and an award of punitive damages should be imposed against them in addition to compensatory damages.

**DEMAND FOR JURY TRIAL**

107. Plaintiffs demand a jury trial in this action.

WHEREFORE, Plaintiffs pray for entry of a Judgment against Defendants, individually and collectively, and jointly and severally, for compensatory, treble and punitive damages, for injunctive relief, for their attorneys' fees and costs, for pre-judgment and post-judgment interest at the maximum rates under applicable law, and for all other just and proper relief to which they may be entitled.

Respectfully submitted,

Matthew R. House, Ark. Bar No. 99150
James, House, Downing & Lueken, P.A.
Post Office Box 3585
801 West Third Street
Little Rock, Arkansas 72203
501-372-6555 Telephone
501-372-6333 Facsimile
mhouse@jamesandhouse.com
www.jameshousedowning.com

ATTORNEYS FOR PLAINTIFFS

MAYS BYRD & ASSOCIATES P.A.

## ESCROW AGREEMENT

**Parties to this Escrow:** This escrow Agreement is established Mays Byrd & Associates, P.A. by Attorney Richard L. Mays Jr. referred to as ("Escrow Agent") and Dr. Hadrian Nicholas Arthur Fraval for and on behalf of SIL Global Limited referred to as ("Client")

**Purpose of this Escrow:**

1. Client desires to send funds to Escrow Agents Trust Account and to have Escrow Agent hold said funds in a dedicated special purpose client account in order that funds may be held and confirmed for benefit of a Third Party. This Agreement will continue as long as funds are in Account under Attorney control.
2. The account shall be placed under administrative hold for a term of 92 days from January 01, 2017 plus time taken for delivery, receipt and clearance of funds, thereafter said term, the Administration Hold shall be lifted and funds returned to the Instruction of Client.
3. Client desires that after the said term, Escrow Agent shall return said funds to the Attorney's general Trust Account, whereupon Client may request the funds be disbursed either by check, cashiers check, or wire transfer.

**Escrow Services**

**All funds received into escrow shall** first be deposited in a general Trust Account of Richard L. Mays Jr, Esq. of Mays Byrd & Associates, P.A. unless otherwise instructed. Then upon clearing, a dedicated special purpose client escrow account shall be opened and cleared funds will be deposited therein. These funds, while under administrative hold may be confirmed to a third Party, but may not be removed from the dedicated special purpose client escrow account and shall never be placed at risk. A bank statement, with date of issue thereon, of the special purpose client escrow account shall be delivered via email by Attorney Richard L. Mays Jr., Esq. each month to Client.

**Escrow Agent is not a party** to any other transactions client has. Escrow Agent enters into this Agreement solely as a provider of escrow services only. Escrow agent shall be held harmless from any legal actions solely as a provider of escrow services only. Escrow Agent shall be held harmless from any legal actions taken against the Client for using the service provided for unlawful purposes. Escrow Agent acts as depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of any business venture undertaken by the Client. Escrow Agent cannot disclose any information about funds in escrow unless given permission by Client.

**Client hereby indemnifies** and holds Escrow Agent harmless against any loss, liability, damage, cost or expense, including reasonable attorney's fees, (a) related any way to Escrow Agent's acting upon any notice, request, waiver, consent, receipt or other paper or document believed by Escrow

PLAINTIFF'S EXHIBIT 1

Centre Place · 212 Center St. · 7th Floor · Little Rock AR 72201
TEL 501.372.6303
FAX 501.399.9280
TOLL-FREE 800.227.1527
MAYSBYRDLAW.COM

RICHARD L. MAYS, SR. RMAYS@MAYSBYRDLAW.COM
ARKIE BYRD ABYRD@MAYSBYRDLAW.COM
TIFFANY MAYS O'GUINN TMAYS@MAYSBYRDLAW.COM
RICHARD L. MAYS, JR. RMAYSJR@MAYSBYRDLAW.COM

Agent to be submitted by Client or any other proper person and (b) incurred in connection with any act or thing done hereunder.

**Escrow Agent may consult with legal counsel** in the event of any dispute or question as to the construction of these instructions or Escrow Agent's duties thereunder, and Escrow Agent shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of counsel.

**In consideration of acceptance of this appointment** by Escrow Agent, the Client agrees to indemnify and hold harmless as to any liability incurred by the Escrow Agent to any person, firm or corporation by reason of its having accepted same or in carrying out any of the terms hereof, and to reimburse Escrow Agent for all its expenses, including among other things, counsel fees and court costs incurred by reason of its position or actions taken pursuant to these escrow instructions. The Client hereby agrees that the Escrow Agent shall not be liable to anyone for any actions taken by Escrow Agent pursuant to the terms hereof.

**Escrow Agent is hereby authorized, in its exclusive direction**, to obey and comply with all writs, orders, judgments or decrees issued by any court or administrative agency affecting any money held by Escrow Agent.

**All funds submitted to Escrow Agent under this agreement are known, are clean and clear of non-criminal origin and are for immediate credit-same day value/instant cash upon receipt. If for any reason the Escrow Agent must receive cahiers checks or money orders, those funds will not be available for disbursement until the funds have been cleared by the bank of deposit.**

**These instructions may be executed in counterparts,** each of which so executed shall be deemed as original, irrespective of the date of its execution and delivery, and said counterparts together shall constitute one and the same instrument.

**Account Details For Delivery Of Funds:**

**Bank Name: Bank of America AR-101-0101**
**Bank Address: 200 West Capital Ave, Little Rock, Arkansas 72201**
**Account Name: Mays Byrd and Associates IOLTA IV**
**Account Number: 4161321860**
**Swift: BOFAUS3N**
**Routing Number: 026009593**
**Bank Officer: Danita Watson – Banking Central Manager**
**Bank Tel: +1 501 212 1060**
**Bank Fax: +1 501 212 1076**

**SIGNATURE PAGE TO FOLLOW**

**Client**

Dr. Hadrian Nicholas Arthur Fraval
Director
**SIL Global Limited**
1504, Bonham Trade Centre, 50 Bonham Strand, Sheung Wan Hong Kong
Australian Passport Number: E7595551

**Escrow Agent**

Richard L. Mays Jr. Esq.
Mays Byrd & Associates
212 Center St. Centre Bldg, 7th Floor
Little Rock, AR 72201

**Date:** December 14th, 2016

Bank of America Online Banking

**RLM JR TRUST IV: Account Activity Transaction Details**

**Post date:** 12/16/2016

**Amount:** 500,010.00

**Type:** Credit

**Description:** WIRE TYPE:WIRE IN DATE: 161216 TIME:0501 ET TRN:2016121600093458 SEQ:1601792351JX/118572 ORIG:ROFIN AUSTRALIA PTY LTD ID:201014USD1 SND BK: JPMORGAN CHASE BANK, N.A. ID:0002 PMT DET:SWF OF 1 6/12/16 ROFIN AUSTRALIA ESCROW AGREEMENT

PLAINTIFF'S EXHIBIT 2

MAYS BYRD & ASSOCIATES, P.A

December 20, 2017

SIL Global Limited
Mr Hadrian N. Fravel
1504 Bonham Trade Centre
50 Bonham Strand
Sheung Wan
Hong kong

c/o G5 Global Vision Foundation

**REF: RECEIPT OF FUNDS TO IOLTA ACCOUNT**

Dear Mr Fravel,

We confirm receipt of your $ 500 000.00 (Five Hundred United States Dollar) to our IOLTA account(see attached). Your transaction with the G5 Global Vision Foundation will only commence toward the end of January 2017. As our office closes on December 23, 2016 and will only reopen on January 16th 2017, it will be only at this time that we will be able to prepare the dedicated special purpose client escrow account. Till then your funds will remain in our IOLTA account.

Sincerely,

Richard L. Mays Jr.

PLAINTIFF'S EXHIBIT 3

Centre Place · 212 Center St. 7th Floor · Little Rock, AR 72201
TEL 501.372.6303 FAX 501.399.9280
TOLL-FREE 800.227.1529 MAYSBYRDLAW.COM
RICHARD L. MAYS, SR. RMAYS@MAYSBYRDLAW.COM
ARKIE BYRD ABYRD@MAYSBYRDLAW.COM
TIFFANY MAYS OGUINN TMAYS@MAYSBYRDLAW.COM
RICHARD L. MAYS, JR. RMAYSJR@MAYSBYRDLAW.COM

Bank of America

## RLM JR TRUST IV: Account Activity

Balance Summary:$555,247.70 (available as of today 02/06/2017)
View:today 02/06/2017

All Transactions

| Date | Description | Status | $Amount | $Available Balance |
|---|---|---|---|---|
| Amount included in Available Balance | | | | |
| 01/27/2017 | Check 1397 | C | -772.00 | 555,247.70 |
| 01/26/2017 | Check 1396 | C | -594.00 | 556,019.70 |
| 01/26/2017 | Online Banking transfer to CHK 1030 Confirmation# 2246139962 | C | -1,000.00 | 556,613.70 |
| 01/26/2017 | Deposit | C | 1,821.00 | 557,613.70 |
| 01/25/2017 | Check 1393 | C | -1,497.50 | 559,434.70 |
| 01/24/2017 | Check 1394 | C | -807.50 | 560,932.20 |

tabbies PLAINTIFF'S EXHIBIT 4

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Thursday, July 13, 2017 2:51 AM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Request for return of funds

Mr. Fraval,

I am in receipt of your email. However, I am currently out of the state for business. Please also make a note of my email address: rmaysjr@maysbyrdlaw.com. I shall be back in approximately 8-10 days. Once I return I will tend to the business of returning those funds. I apologize for any inconvenience at this time..

Sincerely,

Richard Mays Jr.

--

*Richard L. Mays Jr, Esq.*

***MAYS, BYRD & ASSOCIATES, P.A.***

*212 Center St. 7th Floor*

*Little Rock, Arkansas 72201-3801*

*tel.: (501) 372-6303 | fax: (501) 399-9280 | toll free: (800) 227-1529*

*www.rmaysjr@maysbyrdlaw.com*

*www.maysbyrdlaw.com*

PLAINTIFF'S EXHIBIT 5

**DRAFT – AWAITING MERYL LYNCH LEGAL AND COMPLIANCE COMPLETING DOCMENT**

**JULY 27TH 2017**

# STRUCTURED PRODUCT TERM SHEET

***Stricktly Private and Confidential***

**TERMS AND CONDITIONS OF STRUCTURED PRODUCT**

**5 YEAR INTEREST STRIP LINKED TO STANDARD & POORS RATED "AA" OR BETTER ISSUER OF CERTIFICATE OF DEPOSIT**

**100% PRINCIPLE PROTECTED**

This following product is an offering in the form of an Interest Strip linked to a Certificate of Deposit issued by a U.S. bank with a Standard & Poors rating of "AA" or better. The investor receives a 10% (ten percent) discount on the issue price of the interest strip and receives his repayment in the following manner: An annual payment of 3% interest calculated on the discounted issue price and 8% of the principle paid annually, totalling 40% over 5 years, with the remaining 60% of the discounted issue price at the end of the 5 year term; giving the investor a cumulative yield of 15% (fifteen percent) over 5 years. All payments are made annually in arrears and are drawn from the interest payments on the Certificate of Deposit.

| | |
|---|---|
| Certificate of Deposit Issuer: | U.S. Bank with Standard & Poors rating of "AA" or better. Issuer will be determined subject to investors required volume. |
| Arranger: | The Royal Swiss Credit Union and Capital Trust ("Royal Swiss"). |
| Intermediary: | Merryl Lynch. |
| Term of Certificate of Deposit: | Five (5) Years. |
| Interest Rate: | Fixed at 3% per annum payable in arrears. |
| Issue Price of Interest Strip: | 90% |
| Yield: | Cumulative 15% over the term of 5 years. |
| Currency: | USD |
| Contracted Amount for Interest Strips: | Minimum USD 30,000,000 and Maximum USD 100,000,000 |

PLAINTIFF'S EXHIBIT 6

| | |
|---|---|
| Rolls and Extentions: | As agreed. |
| Description/Method: | The CD will be deposited by Royal Swiss with Merrill Lynch. Principal with respect to the CD will be credited to one account and all interest entitlement in respect of the CD will be credited to a separate, second account at Merrill Lynch.<br><br>The investor will enter into a Pledged Collateral Account Control Agreement with respect to this second account by and amoung the investor, Merrill Lynch and Royal Swiss. The investor will be the creditor and secured party and Royal Swiss will be the debtor. A copy of the Pledged Collateral Account Control Agreement is attached as Exhibit A.<br><br>Pursuant to the Pledged Collateral Account Control Agreement, the investor will receive distributions directly from Merrill Lynch to an account specified by the investor with respect to all interest payments received on the Certificate of Deposit and credited to this account. |
| Governing Law: | [State of New York], USA. |
| Risks: | The sole obligor for the interest payments is the Certificate of Deposit Issuer. Accordingly, the investor is relying on the creditworthiness of the Certificate of Deposit Issuer for all payments to be received on this investment. The investor will have no recourse to Merrill Lynch or to Royal Swiss. |
| U.S. Tax Treatment: | Original Issue Discount year-by-year.<br><br>Non-U.S. holders: to avoid 30% withholding, must submit appropriate forms to [Merrill Lynch] |
| Selling Restrictions: | Sales only to Qualified Institutional Buyers (QIB's) as defined in Rule 144A under the Securities Act of 1933, as amended. |
| Transfer Restrictions: | Only to Qualified Institutional Buyers. |
| Listing: | No |
| Public Offer: | No |
| Closing Procedures: | Desk to Desk |

Launch Date: August 31, 2017

***Warrenties and disclaimers:*** *Are being prepare by Merryl Lynch*

**All enquiries are to be directed in writing to:**

**From:** Hadrian Fraval
**Sent:** Wednesday, 13 September 2017 12:12 PM
**To:** 'Richard Mays, Jr. (rmaysjr@maysbyrdlaw.com)'
**Cc:** 'christian.moore@g5gvfoundation.com'
**Subject:** Return of SILG Escrow funds

Dear Mr. Mays Jr,

Please find attached our request to return funds held in escrow on our behalf. The Banking details are detailed in the attached letter.
Thank you for your co-operation.
Yours Sincerely
Hadrian Fraval
Director SILG

On Sep 13, 2017, at 6:49 PM, Hadrian Fraval <Hadrian@rofin.com.au> wrote:

Dear Mr. Mays Jr,

Please confirm receipt of my e-mail yesterday and that fund's return has been actioned.
This is now urgent.
Thank you
Hadrian

**From:** Richard Mays, Jr. [mailto:rmaysjr@maysbyrdlaw.com]
**Sent:** Thursday, 14 September 2017 10:30 AM
**To:** Hadrian Fraval
**Subject:** Re: URGENT - Return of SILG Escrow funds

Mr. Fraval,
Im currently out of the country. I do acknowledge receipt of email. I will follow up with you once I return.

Sincerely,
Richard

On Sep 13, 2017, at 9:21 PM, Hadrian Fraval <Hadrian@rofin.com.au> wrote:

Mr. Mays Jr,

Surely in today's electronic age you can arrange transfer from a remote location. I need this transfer to take place URGENTLY.
Regards
Hadrian

PLAINTIFF'S EXHIBIT
tabbies
7

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Friday, September 15, 2017 10:09 PM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Re: URGENT - Return of SILG Escrow funds

Mr. Fraval,

I understand that the G5 Global Vision Foundation had informed you that all funds in escrow are now under administrative hold as it is this administrative hold that underpins the trading through the issuing of the Certificates of Deposit where the interest strips are sold to exit buyers, thereby enabling the project funding to commence. I also understand that you have a copy of the Term Sheet given to you by the G5GVF. The Arranger is appointing several financial brokerages who will now take the product to market. Until the exit of the first tranche of interest strips is complete all funds in escrow must remain under administrative hold.

I ask that you refer directly to the G5 Global Vision Foundation who will be able to further advise you.

Sincerely,

Richard

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Thursday, October 26, 2017 6:38 AM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Update for return of funds

Mr. Fraval,

I hope that your day is going well. I want to update you on what I have been able to establish at this present time. This week, trading accounts are being finalized. During the following week the trade process will begin. The week thereafter, your funds should be available to be returned back to the account of your choosing. I do understand that this has been a longer than expected process than anyone of us had initially thought. Your patience and understanding are greatly appreciated. At the present time all is on schedule. If there are any delays I will update you accordingly.

Sincerely,
Richard

--

*Richard L. Mays Jr, Esq.*

***MAYS, BYRD & ASSOCIATES, P.A.***

*212 Center St. 7th Floor*

*Little Rock, Arkansas 72201-3801*

*tel.: (501) 372-6303 | fax: (501) 399-9280 | toll free: (800) 227-1529*

*www.rmaysjr@maysbyrdlaw.com*

*www.maysbyrdlaw.com*

*CONFIDENTIALITY NOTICE: The information contained in this electronic message and any attachments is intended solely for the use of the entity to whom this message is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by returning the transmission via First Class US Mail and/or contacting the sender via telephone.*

**Hadrian Fraval <Hadrian@rofin.com.au>** Sun, Aug 26, 7:07 PM

to me

PLAINTIFF'S EXHIBIT
tabbies
8

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Thursday, November 9, 2017 9:34 PM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Re: Update for return of funds

Dear Mr. Fraval,

I wanted to give you an update on what i've been able to ascertain about the return of your funds. There was a delay as some of the compliance issues of setting up the accounts took longer than expected, However all the accounts have been set up and I shall get an update Friday November 10, 2017 after the close of business day. I will update you again once I receive that information . Thank you for your patience and understanding.
Sincerely,
Richard

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Friday, December 1, 2017 7:32 AM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Update - 11/30/17

Dear Mr. Fraval,

All is moving as planned. The process is in structuring of the bank obligation and separating the interest which then must be converted into a structured product and must be in its own designated account. Then the everything must be linked to the ISIN & CUSIP and the settlement platform. This is process does take time. In your previous email you asked for the CUSIP and ISIN numbers. Those will be provided once this process is finalized. Once again, as stated in the previous email, once the structured product has been listed, upon their sale will the transactions be deemed concluded. Until sale of the structured product, everything is secured by the bank securities.

--

*Richard L. Mays Jr, Esq.*

***MAYS, BYRD & ASSOCIATES, P.A.***

*212 Center St. 7th Floor*

*Little Rock, Arkansas 72201-3801*

*tel.: (501) 372-6303 | fax: (501) 399-9280 | toll free: (800) 227-1529*

*www.rmaysjr@maysbyrdlaw.com*

*www.maysbyrdlaw.com*

*CONFIDENTIALITY NOTICE: The information contained in this electronic message and any attachments is intended solely for the use of the entity to whom this message is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by returning the transmission via First Class US Mail and/or contacting the sender via telephone.*

On Dec 10, 2017, at 10:57 PM, Hadrian Fraval <Hadrian@rofin.com.au> wrote:

Dear Mr Mays Jr.
Yet another 10 days has elapsed since your last e-mail. Have the transactions been deemed concluded and the sale of the structured products started. Our partners GVGV advise that the platform confirmed that funds will be available by 16th Dec. Please provide the ISIN & CUSIP numbers. This will allow my funds to be released. Please urgently advise.
Regards
Dr.Hadrian Fraval

**From:** Richard Mays, Jr. <rmaysjr@maysbyrdlaw.com>
**Sent:** Thursday, December 14, 2017 6:16 AM
**To:** Hadrian Fraval <Hadrian@rofin.com.au>
**Subject:** Re: Update - 11/30/17

Mr. Fraval,
I have received your email. I will follow up with you in the next few days.
Thanks
Richard

Sent from my iPhone

**SIL GLOBAL LIMITED**

**1504, Bonham Trade Centre, 50 Bonham Strand, Sheung Wan , Hong Kong**

**Richard L. Mays Jr. Esq.**
**Mays Byrd & Associates**
**212 Center St. Centre Bldg, 7th Floor**
**Little Rock, AR 72201**

**Dear Mr. Mays Jr,**

**Further to the Escrow Agreement dated 14th December 2016, on behalf of SIL Global Limited, we request that the funds (US$500,000), being held in your RLM Jr. Trust IV Account, (together with interest accrued and other loan amounts) be returned in accordance with clause 3., to :- Dr. Hadrian Nicholas Arthur Fraval, Director of SIL Global Ltd. at the following Banking co-ordinates:-**

**Bank: St. George Bank Pty Ltd**

**Account Name: Rofin Australia Pty Ltd**

**Swift code: SGBLAU2S**

**Account Number:** [redacted]

**Bank Address: Treasury Operations**

**Level 12, 55 Market Street**

**Sydney NSW 2000, AUSTRALIA**

**Thank you for your co-operation. Failing to immediately return these funds, our legal team is ready to initiate proceedings to the fullest extent.**

**Yours Faithfully,**

**Dr. Hadrian Fraval**

**Director SIL Global Ltd.**

**23rd April 2018**

SIL Global Ltd
Tel: +852 8114 2684
Company Number : 882151
Fax: +852 3159 8467
Email: info@silglobal.com

PLAINTIFF'S EXHIBIT 9

# OF COUNSEL SERVICES

**A Global Management Services Company**
1813 Tyler Lane, Louisville, KY 40205
4040 Amaranta Ave., Palo Alto, CA 94306
www.ofcounselservices.com
Email: mmclark@ofcounselink.com
Telephone: 813.600.8242


April 27, 2018 *Sent via electronic and certified mail*

Richard L. Mays, Jr.
Mays, Bird Law & Associates
Attorneys at Law
212 Center Street, Centre Bldg.
Little Rock, Arkansas 72201

PLAINTIFF'S EXHIBIT 10

Re: Return of Dr. Hadrian Fraval's Funds

Dear Mr. Mays, Jr.

This is further to my letter of yesterday, April 26, and our telephone conversation of the same day. This will reiterate the previously stated demand and instruction that Dr. Fraval's $500,000 U.S. in funds (the "Funds") placed into your firm's fiduciary care and control be immediately returned. (Funds sent to you on December 16, 2016 with your receipt confirmed on December 20, 2016). This letter will confirm the commitments you made in our phone call yesterday and request that you promptly do as promised.

1. You agreed to provide concrete documentation that the Mays, Bird Law Firm and yourself as the responsible attorney retain full fiduciary custody and control of the entirety of the Funds. In accordance with Paragraph 3 of the parties' escrow agreement, we insist you supply a current bank statement (and the most current tear sheet) showing that the Funds remain "in trust" with your Law Firm, thereby demonstrating to the satisfaction of my client and me that these Funds have not been improperly or illegally dissipated or dispersed.

2. You stated the funds are "blocked" and cannot be disbursed. However, you have glaringly failed to provide one whit of evidence. In fact, you stated that you were only told about it "verbally". In the absence of any written evidence of the so-called blockage, applicable law requires that you return the Funds as demanded. If this blockage is an administrative hold resulting from a transaction (e.g., term sheet) in process, you have a fiduciary duty to provide us with full disclosure and documentation. <u>Your failure to release the Funds or provide full disclosure and supporting documentation is a very serious legal, regulatory, ethical violation. Accordingly, this letter demands, most emphatically, that you either provide proof of this so-called blockage or immediately instruct the Bank to release the funds to Dr. Fraval pursuant to the wire instructions provided to you. Your refusal to do either is malfeasance of the highest order.</u>

3. You made reference in our call to Dwight Dubose at the Royal Swiss Capital Trust ("Swiss Trust") and Susan Dragoneas at The Advisory Group ("TAD"). I requested contact information for both individuals. You provided only Ms. Drangoneas' email. Now please provide your contact information for Mr. Dubose. Also, please kindly explain his relationship with Bernette Dubose, who is the only disclosed signatory for the Swiss Trust.

We remain hopeful this matter can be resolved amicably, without dispute. Accordingly, your prompt, complete cooperation is expected. In its absence, I have been authorized to pursue the full range of civil and regulatory remedies available in law and equity.

Sincerely,

*Matthew M. Clark*

Matthew M. Clark
Copies to: Mr. Richard Mays, Sr. and
Dr. Hadrian Fraval

**TD Bank**
America's Most Convenient Bank®

Log Off

x6377 - Rofin Australia Pty Ltd

**Account:** x6377 - Rofin Australia PTY Ltd ▼

**Account Activity** **Account Details**

Today's Beginning Balance: **$500 000.00**

**Available Balance: $500 000.00**

Pending Transactions: **$0.00**

Switch to Online Statements - Easy. Secure. Green.

Account History

Export Information

Show Last 10 days ▼ Type All ▼ 4/29/2018 To : 5/08/2018 **Display**

From Check: To Check:

| Date | Type | Description | Debits | Credits | Balance | Image |
|---|---|---|---|---|---|---|

There are no transactions available for the period selected.

**1-888-751-9000** - Live Customer Service 24/7 | Locations | Terms of Use | Member FDIC | ©2018 TD Bank, N.A. All Rights Reserved.

PLAINTIFF'S EXHIBIT
11